FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 JUN 25 AM 9: 26

U.S. DISTRICT COURT
N.D. OF ALABAMA

JAMES M. ELLIS,                    )

    PLAINTIFF,                    )

VS.                                )          CV 96-H-435-S

AMERICAN CAST IRON PIPE COMPANY,)
HOWARD MCCORMICK,
FRANK CHAMBLEE AND GLEN HICKS,   )

    DEFENDANTS.                   )

ENTERED

JUN 2 5 1997

## MEMORANDUM OF DECISION

The court has before it the defendants' January 15, 1997

motion for summary judgment. Pursuant to the court's January 16,

1997 order, the motion was deemed submitted for decision, without

oral argument, on February 13, 1997.[1] After reviewing the

submissions by the parties in support of and in opposition to the

motion for summary judgment, the court requested that the parties

provide supplemental briefs addressing specific legal issues.

See March 7, 1997 Order. Plaintiff submitted a supplemental

---

[1] On January 15, 1997, defendants submitted the declarations
of Howard McCormick, Leann Barr, H. Arthur Edge, Jr., Timothy
Dawson Davis, Virgil Beck and Andrew W. Reed, as well as the
depositions of plaintiff and Dr. H.E. Logue, M.D. in support of
the motion for summary judgment. Plaintiff filed the depositions
of Deborah Ellis, plaintiff and excerpts from the depositions of
Dr. Donald W. Welsh and Dr. Logue, in opposition to the motion
for summary judgment, on February 6, 1997. Plaintiff also filed
his affidavit, his EEOC charges, an ACIPCO employee's guide, and
excerpts from the deposition of defendant Edge taken in a state
court action on October 1, 1990 (Williams v. ACIPCO, Circuit
Court of Jefferson County, Alabama CV 88-4871). The submissions
by plaintiff also include medical records of plaintiff, notes
produced by defendant, a termination notice, and ADA standing
committee minutes. Plaintiff filed under seal the excerpts from
the depositions of Dr. Welsh and Dr. Logue, plaintiff's affidavit
and his EEOC charges, medical exhibits to plaintiff's deposition
and plaintiff's medical records.

brief on March 29, 1997 and defendants submitted their
supplemental brief on April 16, 1997. The court's ruling in this
matter has been substantially delayed by the parties' failure to
provide specific citations to the record for all factual
assertions in the briefs submitted.

Plaintiff commenced this action in the Circuit Court of
Jefferson County, Alabama on January 31, 1996. Defendants
removed all of plaintiff's claims to this court on February 21,
1996 based on this court's federal question jurisdiction as to
the claims under the Americans With Disabilities Act ("ADA") and
the alleged conspiracy to violate plaintiff's civil rights, under
42 U.S.C. § 1985, asserting that this court should exercise
supplemental jurisdiction over the state law claims by plaintiff.

On March 1, 1996, plaintiff filed a motion to remand this
action to state court based on its inclusion of a claim for
worker's compensation benefits and the bar on removal of such
claims under 28 U.S.C. § 1445(c). By an April 22, 1996 order,
this court remanded to the state court Count One of the complaint
which sought worker's compensation benefits, but denied the
motion to remand as to all other claims.

Plaintiff filed a motion to voluntarily dismiss his claims
for unlawful termination under the ADA, the Rehabilitation Act
and the Alabama Worker's Compensation Statute on October 21,
1996. On November 18, 1996, the court dismissed with prejudice
the claims set forth in Counts II [entitled "Workers Compensation
Retaliatory Discharge"], VI [entitled "Disability Discrimination
(Termination)"], VII [entitled "Americans With Disabilities Act
Retaliatory Discharge"], XI [entitled "Interference With Business

2

Relations"] and XIII [entitled "Breach of Contract (Termination without Just Cause)"] of plaintiff's complaint as to all named defendants.

In the supplemental brief, plaintiff expressly abandons his claim in Count III for refusal to provide a prosthesis. <u>See</u> Plaintiff's Brief of March 28, 1997 at p.6.  Count III is the only portion of the complaint which expressly refers to defendant Glen Hicks.  Plaintiff has presented no evidence or arguments in the brief which support any claims by plaintiff against Hicks. In fact, plaintiff omitted any mention of Hicks when listing the alleged participants in the conspiracy asserted in Count XII of the complaint.  <u>See</u> Plaintiff's Initial Brief at 15.  Plaintiff has in no way justified the continued pursuit of any claims against Hicks as an individual defendant.  Based on the absence of any specific allegations against Hicks and additionally the absence of any proof to support any viable claims in the complaint as they relate to Hicks, the court concludes that Hicks is entitled to summary judgment in his favor as to all claims by plaintiff in this action.[2]  Alternatively, all references below to favorable rulings on the motion for summary judgment as to the collective "defendants" also provide alternative grounds from a ruling in Hicks' favor as to those claims.

At present, the claims before the court for consideration in relation to the summary judgment motion are as follows: (1) Count IV (Americans With Disabilities Act - Unlawful Disclosure); (2)

---

[2]   The failure by plaintiff's counsel to remove Hicks as a named defendant once it became clear that there were no claims against him individually appears to violate both the language and the spirit of Rule 11 of the Federal Rules of Civil Procedure.

3

Count V (Americans With Disabilities Act - Disability
Discrimination); (3) Count VIII - Slander; (4) Count IX -
Intentional Infliction of Emotional Distress; (5) Count X -
Invasion of Privacy; and (6) Count XII - Conspiracy to violate
Civil Rights.

## I.   **FACTUAL BACKGROUND**

Plaintiff was employed by American Cast Iron Pipe Company
("ACIPCO") for almost twenty years.  See Ellis depo., Vol. I, p.
47, 53.[3]  In 1988, plaintiff's left leg was amputated following a
workplace accident.  See Ellis depo., Vol. I, at 248-49.  Prior
to the 1988 accident, plaintiff had worked in the Maintenance
Department of ACIPCO as a Maintenance Mechanic for ten years.
See Ellis depo., Vol. I at 58-60 & 64.  Following his accident,
plaintiff returned to work at ACIPCO's Maintenance Department
working in many different areas, with the majority of his time
spent performing parts man duties[4].  Id. at 71-73, 77-89, 92-93,
96-97, 146-50, 131-32.  Plaintiff suffers from complications of
the leg amputation, which substantially impair his ability to
walk and climb.[5]  See Defendant's Ex. 6 to Ellis depo.

---

[3]  "Ellis depo." is used to refer to plaintiff James M.
Ellis' deposition, with the appropriate volume and page number
indicated.

[4]  Plaintiff describes his duties as a parts man in his
deposition testimony.  See Ellis depo., Vol. I, p. 95-97.

[5]  During his deposition plaintiff also testified that he
suffers from complications from sarcoidosis, which he stated
results in golf-ball sized growths in his lungs.  See Ellis
depo., Vol. I, p. 167-69, 174.  Because there is no further
evidence as to how the sarcoidosis affects the allegations in
this case, the court focuses on the loss of the leg as the
primary disabling condition at issue.

In the fall of 1994, plaintiff suffered a fall at work which injured his back.  <u>See</u> Complaint at ¶ 8.  The issues related to payment of worker's compensation benefits as to this incident were encompassed in Count I of the complaint, which was remanded to the state court.  However, the workplace accident remains relevant in this case due to plaintiff's assertion that he stepped on a ball bearing which was cluttering the walkway and fell, despite his repeated requests that ACIPCO keep walkways clear to alleviate problems he had experienced in safely getting over materials in the walkways.  Complaint at ¶ 11.

On or about November 28, 1994, plaintiff was suspended from his position pending termination.  <u>See</u> Ellis depo., Vol. I p. 422-23; Complaint at ¶ 15.  Plaintiff was told that the basis for his suspension was falsifying company records in violation of a company rule.  <u>Id.</u>  Plaintiff later resigned.

## II.   SUMMARY JUDGMENT STANDARD

Defendants have moved for summary judgment in their favor on all claims asserted by plaintiff.  Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence

of a genuine issue of material fact.  Celotex, 477 U.S. at 323.
Once the moving party has met his burden, Rule 56(e) requires the
nonmoving party to go beyond the pleadings and by his own
affidavits, or by the depositions, answers to interrogatories,
and admissions of file, designate specific facts showing that
there is a genuine issue for trial.  Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material
and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  All reasonable doubts about the facts and
all justifiable inferences are resolved in favor of the
nonmovant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115
(11th Cir. 1993).  A dispute is genuine "if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party."  Anderson, 477 U.S. at 248.  If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted.  Id. at 249.

The method used by the party moving for summary judgment to
discharge its initial burden depends on whether that party bears
the burden of proof on the issue at trial.  See Fitzpatrick, 2
F.3d at 1115-17 (citing United States v. Four Parcels of Real
Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the
moving party bears the burden of proof at trial, then it can only
meet its initial burden on summary judgment by coming forward
with positive evidence demonstrating the absence of a genuine
issue of material fact; i.e. facts that would entitle it to a
directed verdict if not controverted at trial.  Fitzpatrick, 2
F.3d at 1115.  Once the moving party makes such a showing, the

6

burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court, evidence from the record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of

7

specific facts.  <u>Lewis v. Casey</u>, _____ U.S. _____, 116 S. Ct. 2175 (1996).

### III.  **LEGAL ANALYSIS OF PLAINTIFF'S CLAIM**

#### A.  **Plaintiff's General Factual Allegations**

Plaintiff asserts that ACIPCO took adverse action against him by subjecting him to a hostile environment of repeated demeaning and degrading comments regarding his disability by co-employees, supervisory leadmen, and the individual defendants. The comments which plaintiff complains of include those about him being a "cripple," "half a man" and "peg-leg"; that the office was not a cripple ward; needing whole men to work, not half a man; having to do plaintiff's job and his job at the same time and having to "carry" plaintiff or they were tired of "carrying [Plaintiff's] one-legged ass." <u>See</u> Complaint at ¶ 9(a). According to plaintiff he was told that other workers did not have time to "babysit cripples," that "handicaps have no place in a man's job," and that "I have a shop to run, this isn't a handicapped ward," <u>Id</u>. In the complaint plaintiff generally attributes these comments to bosses/leadmen, including Wilson Reed. <u>Id.</u> at ¶ 9(a). When asked to identify who made these statements during his deposition, plaintiff stated he could only identify Wilson Reed and Raymond Brown as those who had made such statements. <u>See</u> Ellis depo. Vol. I, p. 499. Plaintiff also testified that Larry Robbins and defendant Chamblee would make fun of him when Robbins taped a popsicle stick to his finger to mimic plaintiff. <u>Id.</u> Chamblee told plaintiff if he fell and messed up Chamblee's safety record Chamblee would kick

8

plaintiff's ass and ship him to the welding shop. See Ellis depo., Vol. I, p. 514-18.

According to plaintiff, after he filed the EEOC charge asserting disability discrimination and a hostile work environment at ACIPCO, he was subjected to a conspiracy by the individual defendants to retaliate against him for pursuing his complaint. Plaintiff alleges that Frank Chamblee threatened to fire him for filing the EEOC charge on October 29, 1994. See Complaint ¶ 9(b); Ellis depo., Vol. I, p. 180-81, 383-84, 448-49. Additionally, plaintiff asserts that defendants initiated an investigation about past events that ACIPCO officials had previously been aware of in order to identify a basis for discharging plaintiff. See Ellis depo., Vol. I, p. 411-14, 419-20.

In relation to the plaintiff's claim of inaccessible conditions, plaintiff asserts that he and other disabled employees could not freely access the workplace due to obstructions in the walkways and a failure by ACIPCO to modify employee shower facilities to accommodate use by disabled employees. According to plaintiff, he repeatedly notified ACIPCO officials of the failure to maintain the facility in an accessible state. Plaintiff asserts that he fell down injuring himself and avoided trips to the bathroom facility due to ACIPCO's failure to maintain clear pathways in the work area.

**B.    Conspiracy to Deprive Plaintiff of Civil Rights**

Plaintiff alleges in Count XII of the complaint the following:

9

> In violation of federal laws prohibiting discrimination
> and retaliation against individuals who exercise their
> civil rights to petition the government for redress,
> the individual Defendants, agents of ACIPCO, in
> furtherance of a conspiracy to discriminate and
> retaliate against individuals pursuing complaints of
> discrimination against ACIPCO, have conspired with each
> other and other individuals for the purpose of
> harassing and depriving such complainants, and those
> supporting their actions, of their civil and
> constitutional rights.

Although plaintiff does not cite any particular federal law

supporting his claim, he appears to be asserting a claim under 42

U.S.C. § 1985(3). See L.S.T., Inc. v. Crow, 49 F.3d 679, 682 n.4

(11th Cir. 1995). "The elements of a cause of action under

section 1985(3) are '(1) a conspiracy; (2) for the purpose of

depriving, either directly or indirectly, any person or class of

persons of the equal privileges and immunities under the laws;

and (3) an act in furtherance of the conspiracy; (4) whereby a

person is deprived of any right or privilege of a citizen of the

United States.'" Lucero v. Operation Rescue of Birmingham, 954

F.2d 624, 627 (citing United Brotherhood of Carpenters & Joiners

of America, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)).

Based on plaintiff's supplemental brief, he is asserting

that the defendants' actions were motivated by a class-based

animus against him as a handicapped individual pursuing

complaints of discrimination against ACIPCO[6]. See Complaint at ¶

---

[6] In the order requesting supplemental briefs by the
parties, the court inquired as to whether the class which
plaintiff asserts he is a member of is protected from
discrimination under § 1985(3). A plaintiff asserting a claim
under § 1985(3) is required to show "some racial, or perhaps
otherwise class-based, invidiously discriminatory animus behind
the conspirators' action" in order to prevent § 1985(3) from
being a general federal tort law. Griffin v. Breckenridge, 403
U.S. 88, 102 (1971). Section 1985(3) "was not intended to reach
conspiracies motivated by bias towards others on account of their

29. Plaintiff concedes in his brief that the conspiracy claim is only asserted against the individual defendants and not ACIPCO. According to plaintiff, the object of the conspiracy was depriving plaintiff of his right to complain about discrimination occurring at ACIPCO that was based on his disability. In <u>Bray v. Alexandria Women's Health Clinic</u>, the Supreme Court concluded that section 1985(3) was intended to <u>only</u> provide protection to those rights guaranteed against both governmental and private intrusion. 506 U.S. 263, 278 (1993).

While it is true that plaintiff's right to be free from discrimination based on a disability and his right to complain about any such discrimination free from retaliatory conduct is a statutory right under the ADA, this right does not automatically rise to the level of those intended to be protected under section

---

economic views, status or activities." <u>United Brotherhood of Carpenters v. Scott</u>, 463 U.S. 825, 837 (1983). Rather, "[t]he predominant purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters." <u>Scott</u>, 463 U.S. at 836. The term "class" requires more than a group of individuals sharing a desire to act in a certain way or simply a group of victims of some tortuous action. <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 272 (1993).

Upon review of the briefs and the record, this court concludes that it is not compelled to rule on the class issue in this case due to more obvious defects in plaintiff's § 1985(3) claim. Currently there is a split among the Circuits as to whether "handicapped" or "disabled" persons qualify as a class who has experienced sufficient historic discrimination to receive protection under § 1985(3). <u>See</u> <u>W.B. v. Matula</u>, 67 F.3d 484, 503, n.15 (3d Cir. 1995); <u>Suttles v. United States Postal Service</u>, 927 F. Supp. 990, 1002, n.1 (S.D. Tex. 1996); <u>Larson v. School Bd. of Pinellas County</u>, 820 F. Supp. 596, 600 (M.D. Fla. 1993). At present the Eleventh Circuit has not addressed this issue and the only old Fifth Circuit decision, <u>Brown v. Sibley</u>, 650 F.2d 760, 766 (5th Cir., Unit A July 16, 1981), discussed the status of handicapped individuals in a § 1983 claim which was limited to visually impaired persons and was decided prior to the enactment of the ADA.

1985(3) from deprivation.  See 42 U.S.C. §§ 12112 & 12203.  The
United States Supreme Court has stated that "[t]here are few such
rights."[7]  Bray, 506 U.S. at 278.  In fact, the Supreme Court has
even refused to accord such preferred status to the explicitly
protected right of freedom of speech in connection with a purely
private conspiracy.  Id. (discussing Carpenters v. Scott, 463
U.S. 825 (1983)).  The court concludes that plaintiff has failed
to demonstrate that the rights he asserts were the object of the
alleged conspiracy are within the limited type of rights
protected by § 1985(3).

In Great American Federal Savings & Loan Ass'n v. Novotny,
442 U.S. 366, 378 (1979), the Supreme Court determined that
"§ 1985(3) may not be invoked to redress violations of Title
VII."  The court concluded that "[u]nimpaired effectiveness can
be given to the plan put together by Congress in Title VII only
by holding that deprivation of a right created by Title VII
cannot be the basis for a cause of action under § 1985(3)."
Novotny, 442 U.S. at 378.  The plaintiff in Novotny sought
redress for an alleged retaliatory discharge that he asserted
resulted from his opposition to employment decisions by his
employer he considered to be sexually discrimination against
female employees.  Id. at 369-70.

In this case plaintiff is seeking to redress actions by the
defendants that he argues were in retaliation for his complaints

---

[7]  The Supreme Court notes that only the Thirteenth
Amendment right to be free from involuntary servitude and the
Thirteenth Amendment right of interstate travel have been
recognized, when refusing to heighten the right to abortion as
one protected under § 1985(3).  Bray v. Alexandria Women's Health
Clinic, 506 U.S. 263, 278 (1993).

about disability discrimination.  The ADA incorporates the
enforcement procedures and remedies of Title VII, as amended.  42
U.S.C. § 12117(a).  Therefore, the <u>Novotny</u> opinion is persuasive
authority for precluding any action under § 1985(3) for
deprivation of a right created by the ADA.  Like Title VII, the
ADA provides the right to be free from discrimination based on
one's disability and provides protection for those who complain
about such discriminatory practices or participate in proceedings
related to any such charges of discrimination.  42 U.S.C. § 12112
& 12203.  However, as with Title VII, the rights provided by the
ADA, including the right to be free from retaliation for
complaining about disability discrimination, cannot serve as the
basis for a § 1985(3) claim.  <u>See</u> <u>Pappas v. Bethesda Hospital
Ass'n</u>, 861 F. Supp. 616, 621-22 (S.D. Ohio 1994); <u>Long v. Laramie
Co. Community College Dist.</u>, 840 F.2d 743, 752 (10th Cir.), <u>cert.
denied</u>, 488 U.S. 825 (1988).

      Alternatively, in order to defeat summary judgment,
plaintiff must present substantial evidence of an actual
conspiracy or an agreement between the defendants to deny
plaintiff's guaranteed rights.  <u>Griffin v. Breckenridge</u>, 403 U.S.
88 (1971); <u>Larson v. Miller</u>, 76 F.3d 1446, 1456 (8th Cir. 1996).
"[T]he plaintiff must allege with particularity and specifically
demonstrate with material facts that the defendants reached an
agreement."  <u>Larson</u>, 76 F.3d at 1454.  In order to satisfy this
burden, plaintiff must point to at least some facts which would
suggest that defendants "reached an understanding' to violate his
rights."  <u>Id.</u> (citing <u>City of Omaha Employees Betterment Ass'n v.</u>

Omaha, 883 F.2d 650, 652 (8th Cir. 1989)(other citations
omitted)).

In support of their motion for summary judgment, defendants
assert that plaintiff has "proffered nothing more than conclusory
allegations and his own subjective beliefs."  See Defendant's
Memorandum of Law at 15.  During the plaintiff's deposition when
asked what evidence he had that there had been a conspiracy by
the individual defendants against him he responded as follows:

> It would be their actions, the way I was treated.  The
> way Arthur Edge, Howard McCormick, Frank Chamblee and
> Wilson Reed all acted in unison.  In my opinion, they
> all acted in the same pattern that led me to believe
> there was a conspiracy and led me to believe they were
> against me.  When he went to Mr. -- when I went to our
> board man about Mr. Chamblee threatening me and then
> disappearing and going to the main office and coming
> back and saying, "I don't have anything to say.  I'm
> not guilty."  That led me to believe that it was their
> intentions to conspire.  Just my feeling in general the
> way I was treated by all of the above.

See Ellis depo., Vol. II, p. 45-46.  Plaintiff presented no more
supporting factual evidence in the complaint nor points to any
such evidence of a conspiracy in the briefs submitted.  As
defendants have pointed out, plaintiff cannot defeat summary
judgment as to an essential element of his § 1985(3) claim by
simply using personal conclusions and subjective beliefs, absent
other evidence.  The mere fact that defendants may have discussed
plaintiff's complaints of disability discrimination does not
create a conspiracy to deprive him of his rights.  The court
concludes that plaintiff has failed to present any evidence,
other than the plaintiff's subjective belief, on the existence of
a conspiracy, and thus failed to provide sufficient evidence of
essential elements of his claim to prevent summary judgment.

14

Based on the foregoing, plaintiff has failed to state a cause of action under 42 U.S.C. § 1985(3), and alternatively to support any claim of conspiracy with factual evidence. Therefore, all defendants are entitled to a judgment in their favor as to all of the claims asserted under 42 U.S.C. § 1985(3) in the complaint.

### C.    Claims Under the ADA

Plaintiff originally asserted copious claims of disability discrimination in his complaint. The ambiguous nature of the pleadings in the complaint prevented the court from reaching a clear understanding as to what type of claims were being pursued by plaintiff under the ADA. Due to this difficulty in deciphering plaintiff's allegations, the court directed plaintiff to specifically identify any claims under the ADA, in addition to a hostile work environment claim and a claim for improper disclosure of medical information in order to allow proper consideration of the motion for summary judgment.

According to plaintiff's supplemental brief, he is pursuing federal claims under the Americans With Disabilities Act for: (1) hostile work environment harassment (Count V); (2) failure to make facilities accessible to accommodate plaintiff's disability (Count V); (3) retaliation; and (4) improper disclosure of medical information (Count IV).  However, the complaint has no existing claim for retaliation.  The only claim for retaliation under the ADA was the claim for retaliatory discharge in Count VII, which has been dismissed.  Therefore, while plaintiff now makes a belated attempt to assert a claim of retaliation for his

15

filing of a charge of disability discrimination, there is no such cause of action asserted in the complaint and thus no such claim presently before this court.

In the complaint plaintiff entitled his claim in Count V as "Americans With Disabilities--Disability Discrimination (Terms and Conditions)." The briefs and evidence discuss some allegation by plaintiff that he was provided less overtime work than non-disabled employees.[8] However, when asked to identify his claims, plaintiff failed to assert any disparate treatment

_____

[8] As to overtime, plaintiff asserts that overtime work was available and when he sought this work it should have been awarded to him based on seniority. See Ellis depo., Vol. I, p. 359-61. However, according to plaintiff he was denied overtime work as a parts man or when he was assigned overtime work, it required him to perform other work which was dangerous for him because of his use of a prosthesis, caused him back problems and placing him at risk of injury. Id. at 98-99, 103-111, 116-17, 121, 126, 134, 153-54.

Defendant attempts to dispute this claim by McCormick's Declaration, which explains plaintiff's time cards and time sheets for 1984 to 1994. According to McCormick, these documents show that plaintiff actually worked more Sundays after the loss of his leg than before his accident, although only slightly more. See McCormick Affidavit & Exh. Plaintiff objects to this evidence as an inadmissible summary of non-voluminous documents and as being submitted without the underlying documents. Due to the fact that the court did not directly consider McCormick's affidavit in ruling on the motion for summary judgment, the court need not rule on plaintiff's objection. While plaintiff asserts that the man he replaced when he became a parts man, James Smith, worked more hours that plaintiff was given, ACIPCO argues that plaintiff has presented no evidence that Smith worked more hours and had no personal knowledge of Smith's hours. See Ellis depo., Vol. I at 138-40.

Although the court questions whether the refusal to provide overtime hours constitutes evidence of a hostile work environment, the determination that plaintiff has presented no independent claim under the ADA for disparate treatment in relation to hours does not necessarily prevent plaintiff's use of this evidence at trial in relation to other ADA claims, if shown to be relevant and material.

16

claim relating to hours or work assignments.  Based on the
foregoing, the court concludes that any ADA claim premised on
assignment of work or overtime hours has been abandoned.

All ADA claims appear to be asserted only against corporate
defendant ACIPCO.  The Eleventh Circuit has established that
there is no liability for individuals under the ADA.  <u>Mason v.
Stallings</u>, 82 F.3d 1007, 1009 (11th Cir. 1996).  Therefore, the
court will consider all ADA claims by plaintiff as being asserted
only against defendant ACIPCO.

### 1.  Hostile Work Environment

Plaintiff admits that the ACIPCO employees in the
Maintenance Department where he worked regularly engaged in
horseplay.  <u>See</u> Ellis depo., Vol.I, p. 161-62.  During his
deposition plaintiff agreed that horseplay in the Maintenance
Department included comments and jokes about sleeping with
people's wives and daughters as well as rough language.  <u>See</u>
Ellis depo., Vol. I, p. 462-64, 499-501; Defendants' Ex. 21 to
Ellis depo.

Defendant argues that this regular horseplay included
comments about the loss of plaintiff's leg and was welcomed due
to plaintiff's participation in the horseplay.  As proof of
participation, defendant ACIPCO relies on:

> (1) An incident where plaintiff played a prank on one of his
> co-workers by squirting oil in his toolbox.  The co-employee
> complained to ACIPCO management and plaintiff received a
> written reprimand.  <u>See</u> Ellis depo., Vol. I, p. 161-165;
> Defendant's Ex. 5 to Ellis depo.;
>
> (2) Plaintiff made derogatory references to co-employees,
> used profanity on the job and urinated around the plant,
> including in bottles that he hid.  <u>See</u> Ellis depo., Vol. I,

17

p. 458-59, 462-63 & 465-67; Defendant's Ex. 21 to Ellis depo.; and

(3) Plaintiff wrote the word "Fag" on the pants of a vendor representative, a non-ACIPCO employee. <u>See</u> Ellis depo., Vol. I, p. 457; Davis Affidavit.

Based on the evidence presented, the court concludes that these isolated incidents of "horseplay" are totally unrelated to the jokes or other alleged acts of harassment based on plaintiff's disability[9] and insufficient to establish that plaintiff welcomed the conduct as a matter of law.

Defendant ACIPCO also asserts that plaintiff cannot make out a prima facie case of hostile environment harassment without demonstrating that he complained to his employer. According to defendant ACIPCO, in his deposition plaintiff admits that he never complained to anyone in authority about these alleged comments. <u>See</u> Ellis depo., Vol. I, p. 492 & 501-04. Conversely, plaintiff asserts that he complained about the demeaning and degrading conduct to his supervisor Frank Chamblee, Maintenance Superintendent Howard McCormick and to several members of the Board of Operatives. <u>See</u> Ellis depo, Vol. I p. 116-17, 384-85, 405-07, 411-12, 463, 500, 504, 511, 540, 542 and Vol. II p. 23-25; Ellis Affidavit at ¶¶ 9-10.

_____

[9] Defendant ACIPCO also argues that it is entitled to summary judgment on its behalf because "the overwhelming majority of these alleged incidents are unrelated to the loss of Plaintiff's leg." <u>See</u> Defendants' Brief at p.18. While several of the alleged harassing comments and actions do not appear on their face to be related to the loss of plaintiff's leg, upon review of the evidence submitted the court is unwilling to conclude that "an overwhelming majority" of the alleged harassing incidents are unrelated to plaintiff's disability or not based on the disability.

In order for an employer to be liable for the existence of a hostile work environment, the plaintiff must present sufficient evidence showing either that: (1) the employer is directly liable because it either knew or should have known of the hostile and abusive environment through complaints by plaintiff or the pervasive nature of the harassment; or (2) the employer is indirectly or vicarious liable based on evidence that when a supervisor engaged in the harassment he was either (a) acting within the scope of his employment or (b) aided in accomplishing this harassment by the existence of the agency relationship. Faragher v. City of Boca Raton, 1997 WL 204926 (11th Cir. Apr. 15, 1997)(en banc); Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316-17 (11th Cir. 1989); Haysman v. Food Lion, Inc., 893 F. Supp. 1092, 1110 (S.D. Ga. 1995) (citing Vance v. Southern Bell Tel. and Tel. Co., 863 F.3d 1503, 1512 (11th Cir. 1989)).

While it is not clear from the record presented exactly what incidents plaintiff allegedly reported to Chamblee and McCormick, the evidence of notice and allegations of Chamblee's participation is sufficient to create an issue of material fact on the notice requirement. In his brief, plaintiff appears to rely heavily on his contacts with members of the Board of Operatives. Defendant ACIPCO presented the affidavit of Leann Barr, Director of Human Resources, and a portion of ACIPCO's employee handbook both indicating that the Board of Operative members are representatives of the hourly workers and are not officials of ACIPCO. See Barr Affidavit & Exh. According to the employee manual, the Board of Operatives acts as an advisory council to the Board of Management, which includes the executive

19

officers of ACIPCO.  Id.  While plaintiff asserts that ACIPCO's
policies and procedures for resolving workplace problems direct
plaintiff to complain to the Board of Operatives, it is not clear
from the evidence submitted if contact with this board could be
considered as providing notice to management of ACIPCO or if it
simply assists in the grievance procedure.  Even assuming that
the Board of Operatives is a non-management body, proof that
plaintiff complained to the Board member who then met with a
management official on plaintiff's behalf and discussed the acts,
may be sufficient to place defendant on notice of the harassment.
Based on the foregoing, defendant ACIPCO's motion for summary
judgment as to the hostile environment claims is due to be
denied.

### 2.  Failure to Reasonably Accommodate

Plaintiff asserts that ACIPCO failed to make facilities
accessible to accommodate his and other employees' disabilities.
The ADA provides that accommodations for a disabled employee
include accessibility to work areas and non-work areas used by
employees for other purposes, such as break rooms, lunch rooms
and restrooms.  See 29 C.F.R. § 1630.9 App.  While plaintiff may
assert a claim for failure to accommodate his own disability, he
has no standing to pursue a claim as to ACIPCO's failure to
accommodate any other employees' disabilities.

According to plaintiff, ACIPCO refused to maintain the
workplace in a condition which permitted plaintiff to ambulate
safely.  Plaintiff attributes his fall when he stepped on a ball
bearing and injured his back, to ACIPCO's failure to keep

walkways clear of materials despite his request.  Id. at ¶ 12.
Plaintiff describes the area as being blocked by piles of lumber,
oil pools, ball bearings and equipment he had to climb over.  See
Ellis depo., Vol. I, p. 471-72.  Plaintiff stated that he was
required to climb under a truck in order to punch his time card.
Id.  Additionally, plaintiff asserts that when he asked Larry
"Red" Ellis to clear a pathway for him to get in and out of his
work area, Red Ellis called plaintiff "a f****** pain in the
ass," grabbed plaintiff by his shirt and yelled in plaintiff's
face.  See Ellis depo., Vol. I, p. 483-85.

As to non-work areas, plaintiff asserts that ACIPCO did not
provide handicapped-accessible shower facilities and plaintiff
was required to remove his prosthesis to use the bathroom and
shower.  See Complaint at ¶ 11 & Ellis depo, Vol. II, p. 27-28.
Plaintiff argues that had to urinate in bottles because he could
not ambulate to the bathroom facilities.[10]  Plaintiff asserts
that ACIPCO failed to modify shower facilities so that plaintiff
could safely use them.  See Ellis depo., Vol. II, p. 27-28.
According to plaintiff, he was unable to use the shower facility
due to the danger created by the absence of any rails.  Id.
Despite the fact that plaintiff abandoned his separate claim on
ACIPCO's failure to pay for plaintiff's prosthesis, plaintiff
continues to assert that this failure to pay for the prosthesis
resulted in a failure to accommodate.  Defendant ACIPCO does not

_____

[10]  According to plaintiff's deposition, plaintiff requested
that ACIPCO designate a walkway for his use to and from the
bathroom.   ACIPCO marked a path by two yellow lines on the
concrete.   However, plaintiff asserts that ACIPCO failed to keep
the designated walkway clear.  See Ellis depo, Vol. I, 481-82.

address this claim in its briefs other than to argue that the claim has not been properly asserted in the complaint.

In order to assert a claim under the ADA for an employer's failure to make reasonable accommodations, plaintiff must provide evidence that he requested a reasonable accommodation at the time his disability presented a problem on the job. <u>Bultemeyer v. Fort Wayne Community School</u>, 100 F.3d 1281, 1285-86 (7th Cir. 1996); <u>Taylor v. Principal Financial Group</u>, 93 F.3d 155, 165 (5th Cir. 1996), <u>cert. denied</u>, ___ U.S. ___, 117 S. Ct. 586 (1996); <u>Fussell v. Georgia Ports Authority</u>, 906 F. Supp. 1561, 1569 (S.D. Ga. 1995), <u>aff'd without opinion</u>, 106 F.3d 417 (11th Cir. 1997). "The ADA does not require clairvoyance." <u>Hedberg v. Indiana Bell Telephone Co.</u>, 47 F.3d 928, 932 (7th Cir. 1995). In the deposition, plaintiff admits that he never complained to anyone about ACIPCO's failure to make the shower facilities accessible for his use. <u>See</u> Ellis depo., Vol. II, p.28. Plaintiff has not come forward with any evidence indicating a request for reasonable accommodations in relation to the shower facilities. Therefore, defendant ACIPCO is entitled to summary judgment in its favor of the ADA claim of failure to provide reasonable accommodations as it relates to the shower facilities.

Plaintiff asserts that he complained to Chamblee, Red Ellis and Board of Operative members about the inaccessibility of pathways in the work area. <u>See</u> Ellis depo., Vol. I, p. 477-79, 483-85. The factual allegations of failure to make reasonable accommodations in the complaint along with the presence of the failure to reasonably accommodate language in the definition of discrimination under the ADA, 42 U.S.C. § 12112, convinces the

court that plaintiff has properly asserted a claim for failure to reasonably accommodate plaintiff's disability as to certain work areas, including a pathway to the bathroom. Therefore, defendant ACIPCO's motion for summary judgment is due to be denied as to plaintiff's allegations that ACIPCO failed to accommodate his disability as to certain work areas. However, plaintiff's claim as to a failure to reasonably accommodate other employee's disability in any way is due to be dismissed.

### 3. Improper Disclosure of Medical Information

Plaintiff asserts that defendant ACIPCO violated the ADA's record keeping requirements by failing to maintain his medical records separate from his departmental records as required by 42 U.S.C. § 12112(d)(4)(C). Plaintiff alleges that ACIPCO disclosed plaintiff's medical status, examinations and treatments to individuals who had no reason to know of plaintiff's condition by leaving out a departmental record which included medical records. See Complaint at ¶ 22; Ellis depo., Vol. II, p. 63. According to plaintiff, this record keeping error resulted in his medical records being disclosed to some of his departmental co-employees who then discussed his medical condition and made derogatory jokes and comments about plaintiff's treatment and condition.

According to his affidavit, plaintiff looked at the departmental file when left open and saw that it was showing a request for a doctor's appointment regarding the use of pain medication and his concern of addiction to pain medications. See Ellis Affidavit at ¶ 12. In his deposition plaintiff identified the documents he believes contain confidential medical

information and were disclosed to co-employees to be those
contained in Exhibits 26 and 27 of the deposition. See Ellis
depo., Vol.I, p. 526-35. Despite plaintiff's belief that the
documents constitute "medical records," after a review of these
documents, there appears to be no medical information of a
confidential nature disclosed by the "Request For Medical
Treatment/Job Status" forms identified as Exhibit 26. See Exh.
26 to Ellis depo. & Ellis depo., Vol. I, p. 535-37. However, the
"Case Status Report" forms identified in Exhibit 27 contain
medical information that may be considered confidential, such as
prescriptions for pain medication, notes from physical
examination and notes of comments by plaintiff. Based on the
nature of these forms, only those forms in Exhibit 27 arguably
contain confidential medical information that is due to be
protected by the provisions of the ADA.

Plaintiff's counsel states in the supplemental brief that
she was unable to find any cases dealing with the remedy for the
unlawful disclosure of medical records under the ADA. Plaintiff
argues that improper maintenance and disclosure of medical
information is included within the definition of discrimination
under the ADA in 42 U.S.C. § 12112(d)(1), thereby entitling
plaintiff to possible recovery in the forms of declaratory and
injunctive relief, as well as compensatory and punitive damages
under 42 U.S.C. § 1981a(2). Plaintiff's counsel asserts that
this matter should not be viewed as merely one of record keeping,
but as an invasion of important privacy interests. Defendant
argues that improper disclosure of medical records is not

24

included in the ADA's definition of discrimination and
plaintiff's recovery should be limited to injunctive relief.

Upon review of the statute, the court notes that 42 U.S.C. §
12112(d)(1) expressly provides as follows:

> The prohibition against discrimination as
> referred to in subsection (a) of this section
> shall include medical examinations and
> inquiries.

The plain meaning of this provision leads to the conclusion that
an improper medical examination or medical inquiry of an
applicant pre-offer or post-offer or of a current employee as
determined by § 12112(d)(2),(3) or (4) would constitute
discrimination based on disability.  The requirements for
maintaining information gained from permissible examinations or
inquiries as confidential and separate is not expressly included
in the ADA's prohibition against discrimination.  There is no
provision entitling a plaintiff to money damages for the failure
to treat medical information as confidential.  Rather, the court
concludes that plaintiff may be entitled to recover only
declaratory relief, injunctive relief, attorney's fees, and
possibly costs, but not compensatory and punitive damages for an
unlawful disclosure of confidential medical information.

The Fifth Circuit has expressly held that plaintiff had no
cause of action as to medical information obtained before the
effective date of the ADA.  Buchanan v. City of San Antonio, 85
F.3d 196, 199 (5th Cir. 1996).  The ADA went into effect as to
employers with 25 or more employees on July 26, 1992.  42 U.S.C.
§ 12111(5)(A).  This court agrees with the Fifth Circuit and
concludes that plaintiff can maintain no cause of action under

25

the ADA for improper disclosures of medical information obtained before July 26, 1992.  Based on the dates noted on the documents included in Exhibit 27, it appears that all such documents were obtained after July 26, 1992. **If plaintiff is asserting a claim of wrongful disclosure related to any documents not contained in Exhibit 27 of plaintiff's deposition, then he is DIRECTED to provide the court with a brief in accordance with the separate order entered contemporaneously with this memorandum of decision.** ACIPCO's motion for summary judgment is due to be granted in relation to plaintiff's ADA claim for wrongful disclosure of medical information as to Exhibit 26 to plaintiff's deposition and denied in relation to plaintiff's claim as to Exhibit 27.

### D.   **Slander**

In order for plaintiff to prevail against any defendant on his claim of slander, plaintiff must demonstrate that a false communication was made to a third person concerning plaintiff, which would tend to lower him in the eyes of his friends or the community and damaged plaintiff's reputation.  Nipper v. Variety Wholesalers, Inc., 638 So. 2d 778, 781 (Ala. 1994); Harris v. School Annual Pub. Co., 466 So. 2d 963, 964-65 (Ala. 1985). Defendant asserts that plaintiff's claims of slander must fail due to the absence of proof of publication and based on the defenses of truth and privilege.

According to plaintiff's deposition, there are five separate incidents that he identified as involving slanderous statements:

1.  Frank Chamblee allegedly slandered plaintiff with comments about plaintiff being "screwed up on pain pills" and saying that he had an abuse problem with

pain pills.  According to plaintiff, Chamblee referred
to him as "Somonose."  <u>See</u> Ellis depo., Vol. I, p.518-
523; Vol. II, p. 59-60.

2.   Howard McCormick allegedly slandered him by cussing him
in public when he instructed plaintiff to "Unass the
filing cabinet;" "Unass yourself;" "Get the hell out of
here;" or "Take your ass back to work." <u>See</u> Ellis depo.,
Vol. I., p. 507-11; Vol. II, p. 60-61;

3.   Howard McCormick purportedly slandered him by
discussing with plaintiff and Chamblee whether
plaintiff had someone else punch his time card. ˙ <u>See</u>
Ellis depo., Vol. II, p.61  According to plaintiff,
McCormick asked plaintiff "Have you been punching these
time cards?" <u>Id.</u> at 62.  Plaintiff responded: "No, I
haven't.  You gave me permission to have people punch
my card in so I don't have to walk around there.
Remember?" <u>Id.</u>  Then according to plaintiff, McCormick
responded "Yes. From now on punch your own time card."
<u>Id.</u>

4.   Howard McCormick allegedly slandered plaintiff by
leaving his Departmental file open which he argues
contained confidential medical information about
plaintiff.  <u>See</u> Ellis depo., Vol. I, p. 523-26, Vol II,
p. 60; and

5.   Arthur Edge purportedly slandered him with comments
made to vendor representatives.  <u>See</u> Ellis depo., Vol.
I, p. 416-28; Vol. II, p. 96-97.  According to
plaintiff, he was dating a woman who worked for a
vendor, Brungart Equipment.  <u>Id.</u>  Plaintiff testified
that Edge called this woman, Mr. Alcorn of Brungart and
others to inquire if the girl had ever been mistreated
at ACIPCO or if anyone from Brungart had been
mistreated at ACIPCO by plaintiff.  <u>Id.</u>

### Incident Number One

Originally in his deposition, plaintiff asserted that

Chamblee made the statements concerning his pain medication to

Virgil Beck and Wilson Reed.  <u>See</u> Ellis depo., Vol. I, p. 520.

At another point in his deposition, plaintiff asserts that

Chamblee made the slanderous statements to David Ellis and Howard

McCormick.  <u>See</u> Ellis depo, Vol. II, p. 59-60.  Defendant has

presented affidavits by Reed and Beck which state that they never

27

heard Chamblee make statements about plaintiff being "screwed up on pain pills" or having "an abuse problem." See Reed Affidavit and Beck Affidavit at ¶ 2.

Alabama law requires that plaintiff prove that there was publication of a defamatory statement to one or more other parties. Montgomery v. Big B, Inc., 460 So. 2d 1286, 1287 (Ala. 1984). Plaintiff has presented no evidence of publication of the statements by Chamblee, other than his own testimony that Reed and Beck told him these statements were made, which has now been controverted and would be inadmissible at trial as hearsay. Furthermore, even proof of communication by Chamblee of plaintiff's suspected use of pain medication and possible addiction to Beck (a co-employee), Reed (plaintiff's boss or leadman), McCormick (a higher level supervisor) and David Ellis (a co-employee and Board Member handling plaintiff's grievances[11]) would not necessarily constitute publication. Communications among managerial personnel of a corporation involving the company's business do not constitute publication for purposes of slander. Nelson v. Lapeyrouse Grain Corp., 534 So. 2d 1085, 1093 (Ala. 1988). Likewise, "there is no publication, and thus no actionable defamation, '[a]s long as a communication to a nonmanagerial employee falls within the proper scope of that employee's knowledge or duties.'" Cantrell v.

_____

[11]  Although the context of Chamblee's purported statement is not clear from the evidence submitted, if Chamblee made the statement to Ellis during a meeting discussing any dispute or grievance involving plaintiff, then Chamblee would be entitled to an absolute privilege in relation to any statements during such a meeting. Brooks v. Solomon Co., 542 F. Supp. 1229 (N.D. Ala. 1982).

28

North River Homes, Inc., 628 So. 2d 551, 553 (Ala. 1993).

Plaintiff has admitted that when he would suffer from pain at night he would take narcotics and come to work under the effects of these narcotics, causing him to be slow. See Ellis depo., Vol. I, p. 211. Plaintiff baldly asserts in his affidavit that the information in his medical records was not within the scope of Chamblee's or McCormick's jobs because they were not medical doctors. See Ellis Affidavit at ¶ 14. It is illogical to assume that no one at plaintiff's place of employment, other than a medical doctor, would need medical information about plaintiff's medical condition and his current medication in order the carry out the company's business.

Based on the undisputed facts, Chamblee as plaintiff's supervisor or foreman would be acting in relation to the company's business and within his duties when discussing these facts and the possible dangers and work-related problems with managerial employees and co-employees working with and around plaintiff. Likewise, it would be reasonable to assume that the duties and responsibilities of co-employees and line supervisors of plaintiff include being informed of these facts due to safety concerns, production concerns and other work-related changes in duties that might occur as a result of plaintiff being under the influence of narcotics while performing his duties at work. Therefore, defendants are entitled to summary judgment in their favor on the slander claims relating to Chamblee's statements due to the plaintiff's failure to provide sufficient evidence of publication.

29

Defendants also argue that Chamblee's statements are
entitled to the defense of truth. Dr. H.E. Logue testified
during his deposition that it was difficult to say if plaintiff
ever abused his pain medication, but plaintiff admitted to Dr.
Logue that he misused the medication, by taking more than he
should and by accompanying the narcotics with alcoholic
beverages.[12]  See Dr. Logue depo., p. 36-37. The Case Status
Reports on plaintiff also indicate that "his wife informed [the
medical providers] in the past that [they] should avoid
narcotics" and that pain medication was to be dispensed by
plaintiff's wife.  See Ex. 27 to Plaintiff's Depo, p.007027 &
007005.

Plaintiff's use of pain medication, including narcotics, is
undisputed. The truth or falsity of any abuse or misuse of
prescribed pain medication remains in dispute. However,
it appears that Chamblee had some good faith basis for believing
that plaintiff suffered from an abuse problem. Chamblee may be
entitled to a conditional privilege in relation to his statements
about plaintiff's narcotics use and possible addiction.

> "Whether a party makes a communication, and
> such communication is promoted by duty owed
> either to the public or to a third party, or
> the communication is one in which the party
> has an interest, and it is made to another
> having a corresponding interest, the
> communication is privileged, if made in good

---

[12]  Plaintiff vigilantly disputes that he misused any pain
medication and any assertions that he took pain medication in any
way other than as instructed by his physician.  See Ellis
Affidavit.  The court relies on Dr. Logue's testimony only as
providing a possible basis for a good faith belief by Chamblee
that plaintiff suffered an abuse problem, but not as actual
evidence of any misuse or abuse of prescription pain medication
by plaintiff.

30

>           faith and without malice. * * * The duty
>           under which the party is privileged to make
>           the communication need not be one having the
>           force of legal obligation, but it is
>           sufficient if it is social or moral in its
>           nature and defendant in good faith believes
>           he is acting in pursuance thereof, although
>           in fact he is mistaken."

Nelson v. Lapeyrouse Grain Corp., 534 So. 2d 1085, 1094 (Ala.

1988)(other citations omitted). Plaintiff asserts in his brief

that "there is evidence of malice and unlawful intent sufficient

to overcome the 'good faith privilege' asserted by defendants."

See Plaintiff's initial brief, p. 18. However, no such evidence

has been presented to the court in relation to these statements.

Plaintiff relies on Hoover v. Tuttle, 611 So. 2d 290 (Ala. 1992),

where the evidence presented indicated that the defendants knew

the statement made about the plaintiff was false. In this case,

there has been no evidence that Chamblee knew that his statement

about plaintiff's abuse of prescription drugs was in fact false.

        As plaintiff's supervisor, Chamblee had a duty to ACIPCO's

management and the co-employees working around and with plaintiff

to notify them of a potential danger caused by plaintiff's use

and/or abuse of narcotics. According to plaintiff, Chamblee had

access to medical information concerning his follow-up treatment

for pain associated with his amputated leg, which included the

references discussed above. Therefore, the court concludes that

plaintiff had both a duty and a good faith basis for informing

others of plaintiff's narcotics use and suspected abuse and is

therefore alternatively entitled to summary judgment in his favor

on the basis of conditional privilege.

31

## Incident Number Two

The simple act of cussing at plaintiff in public is not actionable as slander. The law of Alabama does not recognize mere statements or words of "abuse," "scurrility" or "vituperation" as creating a cause of action for defamation. See Curtis Publishing Co. v. Birdsong, 360 F.2d 344, 348 (5th Cir. 1966). In order for a statement to be considered slander, it must tend to lower plaintiff in estimation of the community and deter third persons from associating or dealing with him. Clark v. America's First Credit Union, 585 So. 2d 1367, 1370 (Ala. 1991). Plaintiff has failed to present any evidence indicating that he suffered such harm to his reputation as a result of McCormick's cussing. Furthermore, based on the statement identified, the court concludes that no reasonable jury could determine that such a statement would result in the type of harm necessary in order to prevail on a slander claim.

## Incident Number Three

As to the time card conversation, plaintiff said that the comment injured him because it accused him of violating a company rule by punching other people's time cards. See Ellis depo., Vol. II, p. 62-63. Based on the substance of the statements presented, the court again concludes that: (1)there would be no publication due to the discussion of company business among employees of an area within their duties; (2) the subject of the discussion is not the type of subject matter that could be reasonably shown to result in the type of harm necessary to prove slander; and (3) plaintiff's admission that his time card was not

punched by him renders McCormick's statement true and thus not
the proper basis for a slander claim.  See Ellis depo., Vol. II,
p. 61-62; Drill Parts and Service Co. v. Joy Mfg., 619 So. 2d
1280, 1289 (Ala. 1993).


### Incident Number Four

Plaintiff asserts that McCormick's negligent handling of the
departmental file containing medical information about
plaintiff's condition was slander.  Plaintiff has failed to
establish that any of the information disclosed in his file was
in fact "false."  Furthermore, for the reasons set forth above,
the subject matter of plaintiff's use of narcotics and possible
abuse has been recognized by this court to be an area that ACIPCO
management and certain non-management employees working in
plaintiff's area had a reason to know about in carrying out their
job duties.  Based on plaintiff's failure to bring forth any
evidence explaining how the essential elements of slander can be
established in relation to the file, defendants are entitled to
summary judgment on the slander claim as to this incident.


### Incident Number Five

Based on the evidence provided, it appears that plaintiff is
asserting a slander claim based on Edge's simple questioning of
vendor representatives as to whether a particular female
representative had ever been mistreated by plaintiff or if any
vendor representative had been mistreated by plaintiff.  Even
assuming some type of romantic relationship between the vendor
representative and plaintiff, this line of inquiry is not the

type of subject matter that can serve as the basis for a slander action. First, making inquiries does not equate to making false statements. Second, questioning the existence of any general "mistreatment" does not reasonably create the type of harm to plaintiff's reputation that would lower his standing in the community or cause others to no longer associate with him. Therefore, defendants Edge and ACIPCO are entitled to summary judgment in their favor in relation to the slander claims involving incident number five, as listed above.

## E.    **Invasion of Privacy**

Plaintiff appears to be asserting two different wrongs encompassed under the tort of invasion of privacy: intruding into personal matters, seclusion or physical solitude and putting plaintiff in a false light in the public eye. Defendants have argued that plaintiff's claims for invasion of privacy must fail because the disclosure of medical information in his departmental file would not support such a claim. The court finds no merit in this argument. Plaintiff asserts in his brief that his claim also involves "inquiries by the individual defendants into plaintiff's medical condition." However, plaintiff has presented no evidence to the court of such specific inquiries. Alternatively, defendants argue that plaintiff's claim must fail due to the absence of any proof of publication of such private information to a third party. As plaintiff points out in his brief, Alabama law does not require any communication or publication in order to prove an invasion of privacy involving intruding into one's solitude or private matters. <u>Phillips v.</u>

Smalley Maintenance Services, 435 So. 2d 705, 709 (Ala. 1983).
Therefore, defendant's motion for summary judgment is due to be
denied in relation to the invasion of privacy claim premised on
intrusion into one's solitude.

The Alabama Supreme Court has relied upon the definition of
"placing one in a false light" that is provided in *Restatement
(Second) of Torts*, § 652E. Schifano v. Greene Co. Greyhound
Park, 624 So. 2d 178, 180 (Ala. 1993). Based on this definition,
in order for a defendant's conduct to be actionable as that
placing one in a false light, the plaintiff must show that "the
actor had knowledge of or acted in reckless disregard as to the
falsity of the publicized matter and the false light in which the
other would be place." Schifano, 624 So. 2d at 180. Plaintiff
cites to regulations promulgated under the ADA and argues that
these regulations create a heightened duty to protect plaintiff's
privacy as to medical information. However, plaintiff has
presented no evidence indicating either that any of the
defendants knew that the information contained in the
departmental file was false or that any of the defendants acted
in reckless disregard when allowing the information to be
disclosed to plaintiff's co-employees. Based on the absence of
any evidence to support the necessary element that defendants
knew the information was false or acted with reckless disregard,
defendants are entitled to summary judgment in their favor as to
plaintiff's claims on invasion of privacy based upon any claims
of being placed in a false light.

**F.    Intentional Infliction of Emotional Distress/Outrage**

The parties dispute whether the conduct alleged in the
complaint rises to the level necessary to support a claim for
intentional infliction of emotional distress or outrage.    In
order for plaintiff's claim of outrageous conduct to present a
jury question, plaintiff must present sufficient evidence that
the defendants' conduct "(1) was intentional and reckless; (2)
was extreme and outrageous; and (3) caused emotional distress so
severe that no reasonable person could be expected to endure it."
Thomas v. BSE Industrial Contractors, Inc., 624 So. 2d 1041,
1043-44 (Ala. 1993).    The second element has been defined by
Alabama courts to be as "conduct so outrageous in character and
so extreme in degree as to go beyond all possible bounds of
decency, and to be regarded as atrocious and utterly intolerable
in a civilize society."    American Road Service Co. v. Inmon, 394
So. 2d 361, 365 (Ala. 1981).

Plaintiff argues that lewd remarks are sufficient to rise to
the level of outrageous conduct.    The cases relied on by
plaintiff mainly involve sexual harassment and include not only
statements, but physical gestures and touching of a sexual
nature.    Quillen v. American Tobacco Co., 874 F. Supp. 1285 (M.D.
Ala. 1995); Busby v. Truswall Systems, Corp., 596 So. 2d 562
(Ala. 1992); Bailey v. Unocal Corp., 700 F. Supp. 396, 399  (N.D.
Ill. 1988).    The other case cited by plaintiff, Martin v. Norfolk
Southern Railway Co., 926 F. Supp. 1044, 1052 (N.D. Ala. 1995),
involved claims of same-sex harassment and detailed sexually
explicit comments, gestures and physical touching.

36

While statements and jokes which insult, harass and ridicule a person based on one's disability may be reprehensible conduct, the court concludes that the statements and actions alleged by plaintiff in this case do not equate to the same degree of atrocious and intolerable conduct as the egregious sexual harassment cases where lewd comments were accompanied by physical acts and offensive physical touching.  Alabama courts have cautioned that a cause of action based on outrageous conduct should be limited to only the most egregious circumstances, and would only present a question for a jury in a few cases.  <u>Thomas v. BSE Industrial Contractors, Inc.</u>, 624 So. 2d 1041, 1044 (Ala. 1993).  The court concludes that the facts alleged, even when construed in the light most favorable to plaintiff, do not heighten this case to one demonstrating the most egregious circumstances.  Defendants are entitled to summary judgment on their or its behalf on plaintiff's intentional infliction of emotional distress claim.

### IV.  CONCLUSION

A separate order will be entered granting summary judgment as to the appropriate claims and summarizing the claims that remain in this case.  The court's ruling on the motion for summary judgment will completely dispose of any claims by plaintiff against defendant Hicks.  Because the court's order totally eliminates a party from this case, the court has determined that the interest of orderly judicial administration requires that this order be immediately appealable.  Likewise, the order also completely disposes of plaintiff's § 1985(3) claim

and a related purported claim for retaliation under the ADA.
Furthermore, the court's order will dispose of a majority of
plaintiff's state law claims and limit his ADA claims both in
types of claim and as to the relief available should he prevail
on his claim of improper disclosure of medical information.
Although all of plaintiff's claims are somewhat interrelated, the
court's decision would likely prevent the consideration of
certain evidence at trial that would have supported the
conspiracy claim, the slander claim, the invasion of privacy -
false light claim, and possibly the retaliation claim.  Based on
the foregoing and in accordance with Rule 54 of the Federal Rules
of Civil Procedure, the court has concluded that there is no just
reason for delay and by its order will expressly direct the clerk
to enter this order as a final judgment as to those claims upon
which summary judgment was granted and as to those dismissed.

DONE this ___25___ day of June, 1997.


_____
SENIOR UNITED STATES DISTRICT JUDGE